Daniel B. Lopez, SBN: 338377
Law Office of Daniel B. Lopez
1401 21st Street, #16021
Sacramento, CA 95811
M: 818-675-6246
Email: danielblopez.esq@gmail.com
*Attorneys for Plaintiff Beyond Enterprises LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION – LOS ANGELES**

| | |
|---|---|
| BEYOND ENTERPRISES LLC,<br><br>Plaintiff,<br><br>vs.<br><br>EQIBANK LIMITED, EQICORP LIMITED and EQITRADE LIMITED,<br><br>Defendants. | Case No. 2:25-cv-12208-MCS (MBKx)<br>Hon. Mark C. Scarci<br>Hon. Michael B. Kaufman<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRAD YASAR**<br><br>Date: October 19, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7C<br><br>Action Filed: December 23, 2025<br>FAC Filed: June 12, 2026 |

## TABLE OF CONTENTS


| | |
|---|---|
| I. INTRODUCTION | 1 |
| II. FACTS | 1 |
| III. ARGUMENT | 7 |
| A. CLAIM 4 - EXCHANGE ACT - PERSONAL JURISDICTION | 7 |
| EQICORP | 8 |
| EQIBANK | 9 |
| EQITRADE | 10 |
| B. CLAIMS 1-3 - PENDENT JURISDICTION | 12 |
| Claim 1 | 12 |
| Claim 2 | 12 |
| Claim 3 | 12 |
| C. Claim 1 against EQITECH and EQIBANK and Claim 2 against EQIBANK | 13 |
| Claim 1 against EQITECH and EQIBANK | 13 |
| Claim 2 against EQIBANK | 14 |
| IV. CONCLUSION | 15 |

# TABLE OF AUTHORITIES



| **Authority:** | **Page:** |
|---|---|
| FRCP 12(b)(2) | 1 |
| 15 U.S.C. § 78aa | 7 |
| *Action Embroidery Corp. v. Atlantic Embroidery, Inc.* (9th Cir. 2004) 368 F.3d 1174, 1180-1181 | 7, 12 |
| *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120 (2d Cir. 2002)* | 8, 13 |
| *Bristol-Myers Squibb Co. v. Superior Ct.,* 137 S. Ct. 1773, 1783 (2017) | 7 |
| *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)* | 8 |
| *Go–Video,* 885 F.2d at 1416 | 7 |
| *In re Banco Bradesco S.A. Securities Litigation* (S.D.N.Y. 2017) 277 F.Supp.3d 600, 641–643 | 8 |
| *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) | 7 |
| *SEC v. Unifund Sal,* 910 F.2d 1028, 1033 (2d Cir. 1990) | 7 |
| *Securities Investor Protection Corp. v. Vigman (9th Cir. 1985) 764 F.2d 1309, 1316* | 7 |

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff BEYOND ENTERPRISES LLC ("Plaintiff") respectfully submits the following memorandum of points and authorities in opposition ("Opposition") to the motion to dismiss pursuant to FRCP 12(b)(2) ("Motion") served by Defendants EQIBANK LIMITED ("EQIBANK"), EQICORP ("EQICORP"), EQITRADE LIMITED ("EQITRADE") and EQITECH (SEZC) LIMITED ("EQITECH") (individually and collectively "Defendants"). In support of its Opposition are the declaration of Brad Yasar ("Yasar") and the Exhibits attached thereto.

## I. INTRODUCTION

The Motion is brought solely pursuant to FRCP 12(b)(2) and while Plaintiff's Claims 1-3 in the FAC also establish personal jurisdiction over Defendants, Defendants have ignored Plaintiff's Claim 4 which is for violation of Section 10(b) of the Exchange Act and Rule 10b-5. The Exchange Act provides for nationwide service of process and permits the exercise of personal jurisdiction to the limit of the Fifth Amendment's Due Process Clause. Courts generally interpret this provision to mean that personal jurisdiction exists, even if the defendant lacks specific contacts with the district where the plaintiff brings the claim, as long as the defendant has sufficient contacts with the United States and this Court would also have pendent jurisdiction over Claims 1-3.

## II. FACTS

Yasar is a member of Plaintiff, and Yasar is domiciled in California. [Decl. Yasar, ¶1]. Adrian Cazan ("Cazan") is a member of Plaintiff and Cazan is domiciled in California. [Decl. Yasar, ¶2]. Michael Kirby ("Kirby") is a member of Plaintiff and Kirby is domiciled in Michigan. [Decl. Yasar, ¶3]. Yasar, Cazan and Kirby are, and have been, the only members of Plaintiff since the formation of Plaintiff. [Decl. Yasar, ¶4].

EQIBANK is a company registered in the Commonwealth of Dominica with its principal place of business in the Commonwealth of Dominica. [Decl. Yasar, ¶5]. EQICORP is a company registered in the Cayman Islands with its principal place of business in the Cayman Islands. [Decl. Yasar, ¶6]. EQITRADE is a company registered in the Cayman Islands with its principal place of business in the Cayman Islands. [Decl. Yasar, ¶7]. EQITECH is a company registered in the Cayman Islands with its principal place of business in the Cayman Islands. [Decl. Yasar, ¶8].

The Software Development Agreement by and between Plaintiff and EQITECH dated as of January 1, 2022 ("SD Agreement") for the project named "EQIBank Management System and Banking as a Service Infrastructure" was executed in this district. [Decl. Yasar, ¶9(a), Ex. 1]. The SD Agreement contains a California choice of law clause. [Decl. Yasar, ¶9(b), Ex. 1, §19]. Pursuant to the SD Agreement, EQITECH made numerous payments to Plaintiff's bank in San Francisco, California. [Decl. Yasar, ¶41, Ex. 5].

The SD Agreement was signed by Jason Blick ("Blick") as Director of EQITECH. [Decl. Yasar, ¶9(c), Ex. 1]. The services provided by Plaintiff pursuant to the SD Agreement were for the intended benefit of EQIBANK. [Decl. Yasar, ¶9(d), Ex. 1].

The Production Support Agreement by and between Plaintiff and EQIBANK dated as of October 1, 2024 ("PS Agreement") was executed in this district. [Decl. Yasar, ¶9(e), Ex. 2, Signature Certificate on last page]. The PS Agreement contains a California choice of law clause. [Decl. Yasar, ¶9(f), Ex. 2, §18]. Pursuant to the PS Agreement, EQIBANK made numerous payments to Plaintiff's bank in San Francisco, California. [Decl. Yasar, ¶40, Ex. 4].

Blick is a resident of this district and/or was resident in this district at the time of execution of the SD Agreement and/or the PS Agreement. [Decl. Yasar, ¶9(g)].

EQIBANK has one or more customers who are California residents and/or

residents of this district. [Decl. Yasar, ¶9(h)]. Upon information and belief, New York based Community Federal Savings Bank is the correspondent bank for EQIBANK and it regularly provides services to clients who are residents of California including the customers of EQIBANK who are California residents and/or residents of this district. [Decl. Yasar, ¶9(i)].

US Capital Global Securities LLC based in California was engaged by EQITRADE to serve as the lead placement agent for a preferred equity offering for some or all of the Defendants and did serve as such the lead placement agent. [Decl. Yasar, ¶9(j)].

The Subscription Agreement by and between Plaintiff and EQICORP dated as of February 3, 2022 ("Sub Agreement") was executed in this district. [Decl. Yasar, ¶10(a), Ex. 3]. Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39].

EQICORP owns shares in EQITRADE [Decl. Yasar, ¶10(b)]. EQITRADE owns EQIBANK and EQITECH. [Decl. Yasar, ¶10(c)]. The Sub Agreement obligated Plaintiff to perform technical development work for EQIBANK. [Decl. Yasar, ¶10(d), Ex. 3]. Blick, the CEO of EQIBANK, director of EQITECH and director of EQICORP, is a resident of this district and/or was resident in this district at the time of execution of the Sub Agreement. [Decl. Yasar, ¶10(e), Ex. 3].

In connection with the Sub Agreement, Defendants made representations to Plaintiff in this district, including, but not limited to, that the $500,000 in convertible debentures ("Debentures") issued pursuant to the Sub Agreement would automatically convert into common shares if the outstanding principal was not paid in full by the maturity date which was February 4, 2025. [Decl. Yasar, ¶10(g), Ex. 3, Schedule B]. To date, the Debentures have not been automatically converted by Defendants. [Decl. Yasar, ¶10(h)].

Venue is also proper in this district pursuant to §27 of the Exchange Act (15

U.S.C. §78aa) and 28 U.S.C. §1391(b) as this is this district in which a substantial part of the events or omissions giving rise to the claim(s) occurred and/or one or more of the Defendants are subject to the personal jurisdiction of the court in this district. [Decl. Yasar, ¶13].

In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail and interstate telephone communications. [Decl. Yasar, ¶14].

On information and belief, at all times material herein each EQIBANK, EQICORP, EQITRADE and EQITECH (individually and collectively "Defendants") was the agent and employee of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment. [Decl. Yasar, ¶15].

Plaintiff and EQITECH executed the SD Agreement. [Decl. Yasar, ¶16, Ex. 1]. The services provided by Plaintiff pursuant to the SD Agreement were for the intended benefit of EQIBANK and/or EQITECH was acting as EQIBANK's agent. [Decl. Yasar, ¶17]. Plaintiff has fully performed pursuant to the SD Agreement. [Decl. Yasar, ¶18].

For the period from October 15, 2021 through February 22, 2024, Plaintiff submitted 31 invoices numbered BEY-ETCH-01 to BEY-ETCH-31 to EQITECH. All invoices were paid in full by EQITECH and/or EQIBANK except for invoices number: BEY-ETCH-07 dated April 15, 2022 for which there remains an overdue and outstanding balance of $68,871.37; BEY-ETCH-08 dated May 16, 2022 for which there remains an overdue and outstanding balance of $110,187.00; BEY-ETCH-09 dated June 15, 2022 for which there remains an overdue and outstanding balance of $90,715.00; and BEY-ETCH-10 dated July 15, 2022 for which there remains an overdue and outstanding balance of $52,990.00. [Decl. Yasar, ¶19]. The

total overdue and outstanding balance for invoices number BEY-ETCH-07 to BEY-ETCH-10 is $322,763.37. [Decl. Yasar, ¶20].

Plaintiff and EQIBANK executed the PS Agreement. [Decl. Yasar, ¶21]. The services provided by Plaintiff pursuant to the PS Agreement were for the intended benefit of EQIBANK. [Decl. Yasar, ¶22]. Plaintiff has fully performed pursuant to the PS Agreement. [Decl. Yasar, ¶23].

For the period from September 13, 2024 through September 30, 2025, Plaintiff submitted 14 invoices numbered BEY-EQIB-01 to BEY-EQIB-14 to EQIBANK. All invoices were paid in full by EQIBANK except for invoice number: BEY-EQIB-14 dated September 30, 2025 for which there remains an overdue and outstanding balance of $25,000.00. [Decl. Yasar, ¶24].

Plaintiff and EQICORP executed the Sub Agreement. [Decl. Yasar, ¶25]. The Sub Agreement obligated Plaintiff to perform technical development work for EQIBANK. [Decl. Yasar, ¶26]. The services provided by Plaintiff pursuant to the Sub Agreement were for the intended benefit of EQIBANK and/or EQICORP was acting as EQIBANK's agent. [Decl. Yasar, ¶27]. Plaintiff has fully performed pursuant to the Sub Agreement. [Decl. Yasar, ¶28]. Pursuant to the Sub Agreement, the Debentures would automatically convert into common shares if the outstanding principal was not paid in full by the maturity date which was February 4, 2025. [Decl. Yasar, ¶29]. To date, the outstanding principal has not been paid in full to Plaintiff by EQIBANK, EQICORP and/or EQITRADE and the Debentures have not been automatically converted by Defendants so EQIBANK, EQICORP and EQITRADE have breached the Sub Agreement. [Decl. Yasar, ¶30].

Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which he knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff; made various untrue statements of material facts and/or omitted to state material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and did: (i) deceive the Plaintiff as alleged herein; and (ii) caused Plaintiff to purchase or otherwise acquire Securities of little or no value. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein. [Decl. Yasar, ¶31].

Defendants made representations to Plaintiff that the Debentures issued pursuant to the Sub Agreement would automatically convert into common shares if the outstanding principal was not paid in full by the maturity date which was February 4, 2025 ("Representations"). [Decl. Yasar, ¶32, Ex. 3, Schedule B].

Plaintiff reasonably relied upon the Representations and Plaintiff purchased the Debentures based upon the Representations and the Sub Agreement. [Decl. Yasar, ¶33, Ex. 3, Schedule B]. One or more of the Representations were false. [Decl. Yasar, ¶34]. Plaintiff would not have purchased the Securities if it had known that one or more of the Representations were false. [Decl. Yasar, ¶35].

Defendants had actual knowledge of the materially false and misleading statements and/or material omissions alleged herein and intended thereby to deceive Plaintiff or, in the alternative, acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to them. Said acts and Omissions were committed willfully or with reckless disregard for the truth. In addition, Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above. [Decl. Yasar, ¶36].

By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-

5 promulgated thereunder. [Decl. Yasar, ¶37]. As a direct and proximate result of the wrongful conduct of Defendants, Plaintiff suffered damages in connection with its purchase of the Debentures in an amount of no less than $500,000. [Decl. Yasar, ¶38].

## III. ARGUMENT

It is the plaintiff's burden of establishing personal jurisdiction with respect to each defendant. *See Bristol-Myers Squibb Co. v. Superior Ct.,* 137 S. Ct. 1773, 1783 (2017).

"Due process requires that if a defendant is "not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted)."

### A. CLAIM 4 - EXCHANGE ACT - PERSONAL JURISDICTION

The Exchange Act authorizes nationwide service of process. *See* 15 U.S.C. § 78aa; *SEC v. Unifund Sal,* 910 F.2d 1028, 1033 (2d Cir. 1990).

"'[W]hen a statute authorizes nationwide service of process, national contacts analysis is appropriate. In such cases, 'due process demands [a showing of minimum contacts with the United States] with respect to foreign defendants before a court can assert personal jurisdiction.' " *Go–Video,* 885 F.2d at 1416 (quoting *Vigman,* 764 F.2d at 1316) (alteration in original). In a statute providing for nationwide service of process, the inquiry to determine "minimum contacts" is thus "whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country." *Vigman,* 764 F.2d at 1316.' *Action Embroidery Corp. v. Atlantic Embroidery, Inc.* (9th Cir. 2004) 368 F.3d 1174, 1180.

"'The second part of the jurisdictional analysis asks 'whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial

justice'—that is, whether it is reasonable under the circumstances of the particular case." *Bank Brussels Lambert*, 305 F.3d at 129 (citations omitted). If the defendant's contacts with the forum rise to ***643** the level of "minimum contacts," a defendant may defeat jurisdiction only by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether the exercise of personal jurisdiction over a particular defendant would be reasonable, the court must evaluate "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."' *In re Banco Bradesco S.A. Securities Litigation* (S.D.N.Y. 2017) 277 F.Supp.3d 600, 641–643.

**EQICORP**

The Sub Agreement by and between Plaintiff and EQICORP was executed in this district. [Decl. Yasar, ¶10(a), Ex. 3]. Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. Plaintiff is a Wyoming limited liability company. [Decl. Yasar, ¶1]. EQICORP clearly knew that it was offering the Debentures to a Wyoming limited liability company because the Sub Agreement has Plaintiff's address in Wyoming [Decl. Yasar, Ex. 3] and Defendants admit in their Motion that Plaintiff is a Wyoming limited liability company. [Motion at 16:3-4].

Because the Debentures were offered by EQICORP to Plaintiff, a Wyoming limited liability company, there have been the requisite minimum contacts to satisfy the requirements of due process.

As concerns whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice', there is no greater burden on

Defendants to litigate this Action in California than there would be in any other State in the United States.

Yasar is a member of Plaintiff, and Yasar is domiciled in California. [Decl. Yasar, ¶1]. Cazan is a member of Plaintiff and Cazan is domiciled in California. [Decl. Yasar, ¶2]. Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. So California has an interest in adjudicating this Action, the Plaintiff's interest in obtaining convenient and effective relief can best be obtained in California; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy can best be obtained in California; and no state has a greater interest in this Action as concerns furthering substantive social policies.

For the foregoing reasons, this Court has personal jurisdiction over EQICORP.

**<u>EQIBANK</u>**

The Sub Agreement by and between Plaintiff and EQICORP was executed in this district. [Decl. Yasar, ¶10(a), Ex. 3]. EQICORP owns shares in EQITRADE [Decl. Yasar, ¶10(b)]. EQITRADE owns EQIBANK and EQITECH. [Decl. Yasar, ¶10(c)]. On information and belief, at all times material herein each EQIBANK, EQICORP, EQITRADE and EQITECH was the agent and employee of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment. [Decl. Yasar, ¶15].

Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. Plaintiff is a Wyoming limited liability company. [Decl. Yasar, ¶1]. EQICORP clearly knew that it was offering the Debentures to a Wyoming limited liability company because the Sub Agreement has Plaintiff's address in Wyoming [Decl. Yasar, Ex. 3] and Defendants admit in their Motion that Plaintiff is a Wyoming limited liability company. [Motion at 16:3-4].

The Sub Agreement obligated Plaintiff to perform technical development

work for EQIBANK. [Decl. Yasar, ¶10(d), Ex. 3]. Blick, the CEO of EQIBANK, director of EQITECH and director of EQICORP, is a resident of this district and/or was resident in this district at the time of execution of the Sub Agreement. [Decl. Yasar, ¶10(e), Ex. 3].

Because the Debentures were offered by EQICORP to Plaintiff, a Wyoming limited liability company, and the Sub Agreement obligated Plaintiff to perform technical development work for EQIBANK, there have been the requisite minimum contacts to satisfy the requirements of due process.

As concerns whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice', there is no greater burden on Defendants to litigate this Action in California than there would be in any other State in the United States.

Yasar is a member of Plaintiff, and Yasar is domiciled in California. [Decl. Yasar, ¶1]. Cazan is a member of Plaintiff and Cazan is domiciled in California. [Decl. Yasar, ¶2]. Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. So California has an interest in adjudicating this Action, the Plaintiff's interest in obtaining convenient and effective relief can best be obtained in California; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy can best be obtained in California; and no state has a greater interest in this Action as concerns furthering substantive social policies.

For the foregoing reasons, this Court has personal jurisdiction over EQIBANK.

**EQITRADE**

The Sub Agreement by and between Plaintiff and EQICORP was executed in this district. [Decl. Yasar, ¶10(a), Ex. 3]. EQICORP owns shares in EQITRADE [Decl. Yasar, ¶10(b)]. EQITRADE owns EQIBANK and EQITECH. [Decl. Yasar, ¶10(c)]. On information and belief, at all times material herein each EQIBANK,

EQICORP, EQITRADE and EQITECH (individually and collectively "Defendants") was the agent and employee of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment. [Decl. Yasar, ¶15].

Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. Plaintiff is a Wyoming limited liability company. [Decl. Yasar, ¶1]. EQICORP clearly knew that it was offering the Debentures to a Wyoming limited liability company because the Sub Agreement has Plaintiff's address in Wyoming [Decl. Yasar, Ex. 3] and Defendants admit in their Motion that Plaintiff is a Wyoming limited liability company. [Motion at 16:3-4].

The Sub Agreement addressed the valuation and shares of EQITRADE in calculating the Conversion Price. [Decl. Yasar, Ex. 3, Schedule B].

Because the Debentures were offered by EQICORP to Plaintiff, a Wyoming limited liability company, and the Sub Agreement addressed the valuation and shares of EQITRADE in calculating the Conversion Price, there have been the requisite minimum contacts to satisfy the requirements of due process.

As concerns whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice', there is no greater burden on Defendants to litigate this Action in California than there would be in any other State in the United States.

Yasar is a member of Plaintiff, and Yasar is domiciled in California. [Decl. Yasar, ¶1]. Cazan is a member of Plaintiff and Cazan is domiciled in California. [Decl. Yasar, ¶2]. Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. So California has an interest in adjudicating this Action, the Plaintiff's interest in obtaining convenient and effective relief can best be obtained in California; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy can best be obtained in California; and no state has a

greater interest in this Action as concerns furthering substantive social policies.

For the foregoing reasons, this Court has personal jurisdiction over EQITRADE.

**B. CLAIMS 1-3 - PENDENT JURISDICTION**

"Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with ***1181** one or more state or federal claims for which there is not nationwide personal jurisdiction." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.* (9th Cir. 2004) 368 F.3d 1174, 1180–1181.

**<u>Claim 1</u>**

Since state law Claim 1 against EQIBANK arises out of a common nucleus of operative fact [*see* FACTS *supra*] with federal Claim 4 against EQIBANK, EQICORP and EQITRADE, this Court has pendent jurisdiction over state law Claim 1 against EQIBANK. *Id.*

**<u>Claim 2</u>**

Since state law Claim 2 against EQIBANK arises out of a common nucleus of operative fact [*see* FACTS *supra*] with federal Claim 4 against EQIBANK, EQICORP and EQITRADE, this Court has pendent jurisdiction over state law Claim 2 against EQIBANK. *Id.*

**<u>Claim 3</u>**

Since state law Claim 3 against EQIBANK, EQICORP and EQITRADE arises out of a common nucleus of operative fact [*see* FACTS *supra*] with federal Claim 4 against EQIBANK, EQICORP and EQITRADE, this Court has pendent jurisdiction over state law Claim 3 against EQIBANK, EQICORP and EQITRADE. *Id.*

**C. Claim 1 against EQITECH and EQIBANK and Claim 2 against EQIBANK**

"To establish the minimum contacts necessary to satisfy due process with

respect to a nonresident defendant, the plaintiff must show that its "claim arises out of, or relates to, the defendant's contacts with the forum ... [and that] the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)" *In re Banco Bradesco S.A. Securities Litigation* (S.D.N.Y. 2017) 277 F.Supp.3d 600, 641–643.

**Claim 1 against EQITECH and EQIBANK**

This Court has personal jurisdiction over EQITECH and EQIBANK because EQITECH and EQIBANK each have certain minimum contacts with this district, this Action arises out of and/or relates to such minimum contacts and the maintenance of this Action does not offend traditional notions of fair play and substantial justice.

Such minimum contacts include, but are not limited to: the SD Agreement" for the project named "EQIBank Management System and Banking as a Service Infrastructure" was executed in this district; the SD Agreement contains a California choice of law clause; the SD Agreement was signed by Blick as Director of EQITECH; the services provided by Plaintiff pursuant to the SD Agreement were for the intended benefit of EQIBANK; Blick, is a resident of this district and/or was resident in this district at the time of execution of the SD Agreement and/or the PS Agreement; and Pursuant to the SD Agreement, EQITECH made numerous payments to Plaintiff's bank in San Francisco, California. [Decl. Yasar, ¶ 12, Ex. 1; ¶41, Ex. 5].

As concerns whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice', there is no greater burden on Defendants to litigate this Action in California than there would be in any other State in the United States.

Yasar is a member of Plaintiff, and Yasar is domiciled in California. [Decl.

Yasar, ¶1]. Cazan is a member of Plaintiff and Cazan is domiciled in California. [Decl. Yasar, ¶2]. Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. So California has an interest in adjudicating this Action, the Plaintiff's interest in obtaining convenient and effective relief can best be obtained in California; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy can best be obtained in California; and no state has a greater interest in this Action as concerns furthering substantive social policies.

For the foregoing reasons, this Court has personal jurisdiction over EQITECH and EQIBANK on Claim 1.

**Claim 2 against EQIBANK**

This Court has personal jurisdiction over EQIBANK because EQIBANK has certain minimum contacts with this district, this Action arises out of and/or relates to such minimum contacts and the maintenance of this Action does not offend traditional notions of fair play and substantial justice. Such minimum contacts include, but are not limited to: the PS Agreement by and between Plaintiff and EQIBANK dated as of October 1, 2024 was executed in this district; the PS Agreement contains a California choice of law clause; Blick, the CEO of EQIBANK, is a resident of this district and/or was resident in this district at the time of execution of the SD Agreement and/or the PS Agreement; EQIBANK has one or more customers who are California residents and/or residents of this district; and pursuant to the PS Agreement, EQIBANK made numerous payments to Plaintiff's bank in San Francisco, California. [Decl. Yasar, ¶ 9, Ex. 2; ¶40, Ex. 4].

As concerns whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice', there is no greater burden on Defendants to litigate this Action in California than there would be in any other State in the United States.

Yasar is a member of Plaintiff, and Yasar is domiciled in California. [Decl.

Yasar, ¶1]. Cazan is a member of Plaintiff and Cazan is domiciled in California. [Decl. Yasar, ¶2]. Yasar was in California when he executed the Sub Agreement. [Decl. Yasar, ¶39]. So California has an interest in adjudicating this Action, the Plaintiff's interest in obtaining convenient and effective relief can best be obtained in California; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy can best be obtained in California; and no state has a greater interest in this Action as concerns furthering substantive social policies.

For the foregoing reasons, this Court has personal jurisdiction over EQIBANK on Claim 2.

## IV. CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Chatsworth, California
September 28, 2026

Respectfully submitted,

Law Office of Daniel B. Lopez

/s/ Daniel B. Lopez
Daniel B. Lopez
Attorneys for Plaintiff
Beyond Enterprises LLC

## CERTIFICATION

I hereby certify that on September 28, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to counsel for Plaintiff.

/s/ Daniel B. Lopez
Daniel B. Lopez